IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| STAMPIN' UP!, Inc.,<br><br>Plaintiff,<br><br>vs.<br><br>ELIZABETH HURST aka ELIZABETH TERRELL, an individual, and DAVE GUY, an individual, d/b/a DIES BY DAVE,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:16-cv-00886<br><br>Judge Clark Waddoups |

Before the court is Plaintiff's Motion for Default Judgment and Permanent Injunction. (ECF No. 44.) Plaintiff "moves the Court for default judgment against defendant Elizabeth Hurst . . . d/b/a Dies by Dave ('Hurst') on its claims for breach of contract and copyright infringement." (ECF No. 44 at 1.) Plaintiff also argues that "injunctive relief is justified" "to deter [Hurst] from future [copyright infringement] violations." (ECF No. 44 at 7.) As explained below, the court grants Plaintiff's motion for permanent injunctive relief and directs Plaintiff to submit a proposed order. The court also finds that Hurst is liable and default judgment should be entered against her, but will not determine the amount of statutory damages or attorney fees until Plaintiff advises how it wishes to proceed.

## I.    **Background**

On March 3, 2017, Plaintiff filed its Second Amended Complaint against Hurst and Dave Guy, both doing business as "Dies by Dave." (ECF No. 15.) On June 14, 2017, out-of-state counsel "for and in behalf of" Hurst—but not Dave Guy—"accept[ed] service" of the Second Amended Complaint and Summons on "behalf of Dies by Dave." (ECF No. 18 at 1.) On July 5,

1

2017, Plaintiff filed a Motion to Extend Time to Answer the Second Amended Complaint. (ECF No. 19.) In this Motion, Plaintiff provided that it had "served Defendants Elizabeth Hurst and Dies by Daves." (ECF No. 19 at 1.) But it did not mention Dave Guy. The court has not received any proof that Dave Guy was ever served with the Second Amended Complaint.

In the Motion to Extend time to Answer the Second Amended Complaint, Plaintiff explained that "[o]ut-of-state counsel for Defendants has represented that they are in the process of engaging an attorney licensed before this Court so they may appear *pro hac vice*, and there have been unforeseen delays in that process." (ECF No. 19 at 1.) Because of this delay, Plaintiff "agreed to extend the time for Defendants to Answer the Second Amended Complaint . . . ." (ECF No. 19 at 1–2.) On July 6, 2017, Magistrate Judge Furse (Judge Furse) entered an order granting the motion to extend time to answer complaint. (ECF No. 20.) On July 14, 2017, an attorney from a local firm entered a Notice of Appearance of Counsel for Hurst. (ECF No. 21 at 1.) On that same day, that local attorney moved for the out-of-state attorney's admission *pro hac vice* for Hurst. (ECF No. 22 at 1.)

On July 19, 2017, Hurst, through counsel, filed a Motion to Dismiss for Lack of Personal Jurisdiction. (ECF No. 25) And she filed an Answer. (ECF No. 26.) On August 16, 2017, Hurst, through counsel, filed a Notice of Withdrawal of Motion to Dismiss. (ECF No. 30.)

On December 12, 2017, out-of-state counsel for Hurst filed an Unopposed Motion to Withdraw as Counsel. (ECF No. 33.) On December 13, 2017, Judge Furse granted the Motion to Withdraw as Counsel. (ECF No. 34.) On December 18, 2017, Judge Furse entered an Order (ECF No. 38) granting in-state counsel's Amended Motion to Withdraw, (ECF No. 37). Judge Furse's Order provided that "[c]lient or new counsel for [c]lient must file a Notice of Appearance within twenty-one (21) days after the entry of this order . . . ." (ECF No. 38 at 1.) On

January 9, 2018, Hurst filed a Motion for Extension of Time to Retain New Counsel, in which she requested a sixty day extension. (ECF No. 39.) On January 18, 2018, Judge Furse entered an Order granting the motion, but ordered "that Defendants Elizabeth Hurst and Dave Guy have thirty (30) days to retain counsel." (ECF No. 41.) The Order also provided that "[a] party who fails to file a . . . Notice of Appearance may be subject to sanction pursuant to Federal Rules of Civil Procedure 16(f)(1), including but not limited to entry of default." (ECF No. 41.)

More than thirty days passed, and Defendants did not file a Notice of Appearance. On February 21, 2018, Plaintiff filed a Motion for Entry of Default wherein it "move[d] for entry of default against Defendants . . . ." (ECF No. 42.) On February 23, 2018, the court issued an order granting Plaintiff's Motion for Entry of Default. (ECF No. 43.) The court also directed the Clerk of Court to "enter certificates of default against Defendants." (ECF No. 43.) On March 14, 2018, Plaintiff submitted a Motion for Default Judgment and Permanent Injunction, "mov[ing] the [c]ourt for default judgment against . . . Hurst . . . d/b/a Dies by Dave . . . on [Plaintiff's] claims for breach of contract and copyright infringement." (ECF No. 44 at 1.) On March 29, 2018, the Clerk of Court entered the Default Certificate as to both Hurst and Dave Guy. (ECF No. 47.)[1]

## II. Default Judgment

### A. Default Judgment as a Sanction Under Rule 16 and Rule 37

Rule 16 of the Federal Rules of Civil procedure provides that a court "may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party . . . fails to obey a scheduling or other pretrial order." Fed.R.Civ.P. 16(f)(1)(c). Rule 37 provides for certain

---

[1] As noted above, the court has not received any proof that Dave Guy was ever served with the Second Amended Complaint. Dave Guy was therefore never brought within the jurisdiction of this court. This Order applies only to Hurst d/b/a Dies By Dave. The court's entry of default as to Dave Guy is withdrawn. The court's previous order directing Dave Guy to retain counsel is also withdrawn.

3

sanctions when a party does not obey a discovery order, including "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(vi).

"Default judgment" is a "harsh sanction that should be used only when a party's noncompliance is due to 'willfulness, bad faith, or any fault of the disobedient party and not when a party is unable to comply with a [pretrial] order." *See Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1159 (10th Cir. 2013) (alteration in original) (citation omitted). Courts should consider whether a sanction less than default judgment may be appropriate—"[p]articularly in cases in which a party appears pro se . . . ." *See Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 n.3 (10th Cir. 1992). But courts should also be mindful that "a workable system of justice requires that litigants not be free to appear at their pleasure." *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444 (10th Cir. 1983). Courts "therefore must hold parties . . . to a reasonably high standard of diligence in observing the courts' rules of procedure." *Id*.

Before entering default judgment, a court should consider factors set forth in *Ehrenhaus*. *Klein-Becker* 711 F.3d at 1159 ("To determine if a sanction such as . . . default judgment is appropriate, courts should consider [the *Ehrenhaus* factors.]"). The factors are:

> (1) the degree of actual prejudice to the [opposing party]; (2) the amount of interference with the judicial process; (3) the culpability of the litigant, (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.

*Ehrenhaus*, 965 at 921. (citations omitted) (internal quotation marks omitted). The court is mindful that "[i]n *Ehrenhaus*, [the Tenth Circuit] expressly stated the factors 'do not represent a rigid test'. . . ." *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1323 (10th Cir. 2011) (citation omitted). Instead, the factors "are simply a non-exclusive list of sometimes-helpful 'criteria' or guide posts the district court may wish to 'consider' in the exercise of what must always remain a discretionary function." *Id*. In the next paragraph, the court considers the *Ehrenhaus* factors.

4

The court finds that the majority of the *Ehrenhaus* factors weigh in favor of entry of default judgment against Hurst. First, the court notes that Plaintiff, as "the diligent party," "must be protected lest [it] be faced with interminable delay and continued uncertainty as to [its] rights." *Cessna*, 715 F.2d at 1444 (citation omitted) (internal quotation marks omitted). The court finds that Plaintiff is prejudiced by Hurst's delays. Next, the court finds that Hurst is culpable. Hurst filed a Motion for Extension of Time to retain new counsel. (ECF No. 39.) Judge Furse granted this Motion. (ECF No. 41.) Hurst was aware she had 30 days to retain counsel, but she did not do so. She is culpable. The next factor, "whether the court warned [Hurst] in advance that [entry of default judgment] would be a likely sanction for noncompliance," *Ehrenhaus*, 956 at 921, weighs heavily against Hurst. Judge Furse's Order provided that "[a] party who fails to file a Notice of Substitution of Counsel or Notice of Appearance may be subject to sanction pursuant to Federal Rules of Civil Procedure 16(f)(1), including . . . entry of default." (ECF No. 41 at 1.) The court finds that Hurst was properly warned that entry of default judgment would be a likely sanction for noncompliance. Finally, the court finds that other sanctions would not be effective in this case. The court, with the threat of default, ordered Hurst to retain counsel, but she did not do so. The court doubts that lesser sanctions would be effective in spurring her to action. The court finds that the majority of the *Ehrenhaus* factors weigh in favor of entry of default judgment against Hurst.

B. Rule 55

The court, "having determined that [Hurst's] noncompliance warrants an entry of default judgment pursuant to Rule 37," follows "the procedure for entry of a default judgment as set forth in Rule 55." *See Coach, Inc. v. O'Brien*, 2012 WL 1255276, at *10 (S.D.N.Y. Apr. 13, 2012) (alteration removed). "Decisions to enter judgment by default are committed to the district

5

court's sound discretion . . . ." *Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003). "A defendant who fails to . . . defend an action is deemed to have admitted the well-pleaded factual allegations of the complaint as true." *Lopez v. Highmark Constr., LLP*, No. 17-CV-01068-CMA-MLC, 2018 WL 1535506, at *2 (D. Colo. Mar. 29, 2018) (citations omitted); *see also Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) ("A defendant, by [her] default, admits the plaintiff's well-pleaded allegations of fact . . . .") (internal quotation marks omitted)). In order for a district court to enter default judgment, "there must be a sufficient basis in the pleadings" "constitut[ing] a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010).

But before a court considers the merits of the plaintiff's claims, it must first consider both personal and subject matter jurisdiction. *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986) ("when entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties. In reviewing its personal jurisdiction, the court does not assert a personal defense of the parties; rather, the court exercises its responsibility to determine that it has the power to enter the default judgment.").

1. <u>Subject Matter Jurisdiction</u>

The court has original jurisdiction because this is a copyright infringement case. *See* 28 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any Act of Congress relating to . . . copyrights . . . ."). The court has supplemental jurisdiction over the breach of contract claim. 28 U.S.C. § 1367 ("in any civil action of which the district courts have original

jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related . . . that they form part of the same controversy . . . .").

    2. Personal Jurisdiction

The court has personal jurisdiction over Hurst because she agreed to submit to the jurisdiction of this court. Parties may expressly consent to the personal jurisdiction of a court by stipulating "in advance to submit their controversies for resolution within a particular jurisdiction." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14, 105 S. Ct. 2174, 2182, 85 L. Ed. 2d 528 (1985) (citation omitted). "Where such forum-selection provisions have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust,' their enforcement does not offend due process." *Id*. (citation omitted). Plaintiff has alleged that Hurst signed the "Independent Demonstrator Agreement . . . in 2009." (Ekins Decl. ¶ 3, ECF No. 45 at 2;) *see also* (2nd Am. Compl. ¶ 10, ECF No. 15 at 5 ("On September 30, 2009, Hurst entered into a contract with Stampin' Up! to work as an independent demonstrator . . . .")). The Independent Demonstrator Agreement provides that "[p]roper jurisdiction . . . for any disputes between the parties shall be in federal court . . . having jurisdiction in Salt Lake City, Utah." (ECF No. 45-1 at 5.). The court notes that the copy of the Independent Demonstrator Agreement that Plaintiff provided to the court does not contain Hurst's signature. (*See* ECF No. 45-1 at 5.) But Hurst admitted that she entered the contract in paragraph 11 of her Answer to the Amended Complaint. (*See* Answer ¶ 11, ECF No. 26 at 2 (admitting "Paragraph 10" of the Second Amended Complaint, which provides that "[o]n September 30, 2009, Hurst entered into a contract with Stampin' Up! . . . .")) Moreover, because Hurst is deemed to have admitted the factual allegations of the complaint as true, the court assumes she did in fact sign the Independent Demonstrator Agreement. The court therefore has personal jurisdiction over Hurst.

7

3. Copyright Infringement

The court, having established jurisdiction, now addresses whether the Plaintiff's allegations contain sufficient factual matter, accepted as true, to state claims for copyright infringement as to Hurst. To state a cause of action for copyright infringement, a plaintiff must plead: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Blehm v. Jacobs,* 702 F.3d 1193, 1199 (10th Cir. 2012) (citations omitted) (internal quotation marks omitted). Plaintiff has alleged ownership of a valid copyright. (2nd Am. Compl. ¶ 19, ECF No. 15 at 20) ("Stampin' Up! owns the copyright in and to the Catalogs . . . and has properly registered said copyright with the United States Copyright Office."). Because Hurst is deemed to have admitted the well-pleaded factual allegations of the Second Amended Complaint as true, the first element, ownership, is not at issue. The court therefore turns to the second element, copying.

"The copying element of an infringement claim has two components." *Blehm*, 702 F.3d at 1199. First, a plaintiff must demonstrate that the defendant copied the plaintiff's work 'as a factual matter.'" *Id*. (quoting *Gates Rubber Co. v. Bando Chem. Indus., Ltd.,* 9 F.3d 823, 832 (10th Cir.1993)). "Second, the plaintiff must establish 'substantial similarity' between the allegedly infringing work and the elements of the copyrighted work that are legally protected." *Id*. (citation omitted). The "substantial similarity" component "is a mixed question of law and fact," and it "determines whether a defendant's factual copying constitutes actionable infringement." *Id*. (citation omitted). Because a "party in default does not admit mere conclusions of law," *Bixler* 596 F.3d at 762, the court must first determine whether Plaintiff's

factual allegations contained in the Second Amended Complaint satisfy the "substantial similarity" component before entering an Order of Default Judgment against Hurst.[2]

  a. Substantial Similarity

"'In order to prove copying of legally protectable material, a plaintiff must typically show substantial similarity between legally protectable elements of the original work and the allegedly infringing work.'" *Id*. at 1199–1200 (alterations in original removed) (quoting *Jacobsen,* 287 F.3d at 942–43). Copyright protection extends to "elements of the copyrighted work," i.e, "original *expression*," but "not to the *ideas* embodied in that expression." *Blehm*, 702 F.3d at 1200–01 (emphasis added). "Thus, courts comparing works must . . . distill the protectable elements of the copyrighted work—i.e., determine what aspects constitute protectable expression." *Id*. at 1200. "At times, [the Tenth Circuit] [has] used an 'abstraction-filtration comparison' approach to aid [its] substantial similarity inquiry." *Id*. at 1200 n. 4. "But 'not every case requires extensive analysis,' and the appropriate test 'may vary depending on the claims involved, the procedural posture of the suit, and the nature of the works at issue.'" *Id*. (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 943n. 5. (10th Cir. 2002). "Regardless of [the] method of distilling the protectable aspects of the [copyrighted work], the ultimate issue is whether the [infringing work] is substantially similar to protectable aspects of [the copyrighted work]." *Jacobsen*, 287 at 943 n. 5.

---

[2] "Although the issue of substantial similarity may be an issue of fact for resolution by a jury, a court may determine non-infringement as a matter of law where (1) the similarity between the two works concerns only non-copyrightable elements of the plaintiff's work or (2) no reasonable jury could find that the two works are substantially similar." *Fisher v. United Feature Syndicate, Inc.*, 37 F. Supp. 2d 1213, 1224 (D. Colo. 1999), aff'd, 203 F.3d 834 (10th Cir. 2000). The court believes it necessary to determine "substantial similarity" before entering default judgment against Hurst because "[n]ot all copying . . . is copyright infringement." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 1296, 113 L. Ed. 2d 358 (1991). In other words, even though Plaintiff has alleged copying, the court feels it is necessary to independently determine whether the similarity between Hurst's dies and Plaintiff's designs concerns copyrightable expression.

Before turning to Plaintiff's work, the court finds that "extensive analysis" regarding the "idea/expression" distinction is not needed in this case because the works at issue are "relatively simple" *Blehm*, 702 F.3d at 2012 at n. 4, and because the court considers these issues a motion for default judgment. The court is also "cognizant that under the law of copyright, 'even a modicum of creativity may suffice for a work to be protected.'" *Id*. at 1205 (quoting *Universal Athletic Sales Co. v. Salkeld,* 511 F.2d 904, 908 (3d Cir.1975)).

Plaintiff has alleged that Hurst "sold dies that are designed to cut patterns that exactly match the outline of certain items of the Stampin' Up![designs]." (2nd Am. Compl. ¶ 11, ECF No. 15 at 5.) In support of its allegation, Plaintiff included a chart comparing the copyrighted Stampin' Up! designs with Hurst's allegedly infringing dies. The Stampin' Up! designs are found in "at least four Stampin' Up! works: [1] the 2015–16 Holiday Catalog; [2] the 2012–13 Annual Catalog; [3] the 2013–14 Annual Catalog; and [4] the 2014–15 Annual Catalog . . . ." (ECF No. 44. At 6.) Rather than determine whether each of the Stampin' UP! designs contain protectable elements of copyrighted work, the court will simply determine whether each Catalog contains protectable elements of copyrighted work—i.e., "determine what aspects constitute protectable expression." *Blehm*, 702 F.3d at 1193.

The court begins with the 2015–16 Holiday Catalog. The court finds that certain portions of the 2015–16 Holiday Catalog contain non-protectable ideas—rather than protectable expressions. When considering "two-dimensional" "works of fine, graphic . . . applied art . . . [and] art reproductions," 17 U.S.C. § 101, the "Copyright Act's focus [is] on artistic innovation" and does not "offer protection to utilitarian qualities." *Country Kids*, 77 F.3d at 1287. Therefore, "any basic and utilitarian aspects" of the two-dimensional works of art, "such as shape" "cannot be copyrighted." *See id*. Further, "courts routinely find that depictions of animals are

unprotectable because the expression of the animal in nature has merged with the idea of the animal." *Sportsmans Warehouse, Inc. v. Fair*, 576 F. Supp. 2d 1175, 1195 (D. Colo. 2008). In the 2015–16 Holiday Catalog, the "Dove of Peace" is not entitled to copyright protection because the similarities "between [the] copyrighted work and [the] allegedly infringing work are inherent in a nonprotectable idea"—the shape of a dove. *Country Kids*, 77 F.3d at 1286. While the "Dove of Peace" is not entitled to copyright protection, other designs contained in the 2015–16 Holiday Catalog are entitled to protection.

The court finds that the "Sparkly Seasons" design, (ECF No. 15 at 8), found in the 2015–16 Holiday Catalog, constitutes original expression that is entitled to protection. While basic utilitarian aspects of two-dimensional works of art are considered non-protectable ideas, the *combination* of simple elements and use of specific designs can constitute original expression that is protected. *C.f. Blehm* 702 F.3d at 1201–02 ("In architecture, there is no copyright protection for the idea of using domes, wind-towers, parapets and arches." "On the other hand, the combination of common architectural elements and use of specific designs may constitute original expression that is protected." (internal quotation marks omitted) (citation omitted)). The "Sparkly Seasons" design depicts, among other things, a ballerina, a snowman, and a nutcracker. (ECF No. 15 at 8.) Hurst copied the shapes of the ballerina, snowman, and nutcracker and sold those dies, among others, in a single group, titled "Snow Globe Buddies." While the individual ballerina, snowman, and nutcracker may not by themselves constitute expression, Plaintiff's decision to sell those specific items together "in combination" in a design titled "Sparkly Seasons" does constitute protectable expression. The court finds that Hurst's "Snow Globe Buddies design" is substantially similar to Plaintiff's "Sparkly Season" design. Plaintiff has

11

pleaded adequate facts to demonstrate that Hurst copied protectable elements from the 2015–16 catalog.

The court likewise finds that the 2012–13 Annual Catalog, the 2013–14 Annual Catalog, and the 2014–15 Annual Catalog likewise contain protectable elements. The court finds that the "Stippled Blossoms" design from the 2012–13 Annual Catalog, the "Zoo Babies" design from the 2013–14 Annual Catalog, and the "Sea Street" design from the 2014–15 Annual Catalog all depict common items/animals that "in combination" constitute protectable expression. Hurst copied the shapes of the items/animals in her dies. The court finds that Hurst's "Blush Blossom," "Baby Zoo," and "Sea Time" designs are all substantially similar to Plaintiff's designs. Plaintiff has pleaded adequate facts to demonstrate that Hurst copied protectable elements from the 2012–13 Annual Catalog, the 2013–14 Annual Catalog, and the 2014–15 Annual Catalog.

   4. Breach of Contract

Plaintiff has adequately pleaded a claim for breach of contract. Under Utah law, [t]he elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." *Soundvision Technologies, LLC v. Templeton Grp. Ltd.*, 929 F. Supp. 2d 1174, 1185 (D. Utah 2013). Plaintiff has pleaded the requisite facts in the Second Amended Complaint. First, Plaintiff has pleaded that "[t]he Contract between [Plaintiff] and Hurst is a valid and enforceable contract." (2nd Am. Compl. ¶ 25, ECF No. 15 at 20. ) Second, Plaintiff has alleged that it "performed all of its obligations under the Contract." (2nd Am. Compl. ¶ 26, ECF No. 15 at 20.) Third, Plaintiff has alleged that "Hurst breached the Contract by selling dies . . . that infringe Stampin' Up!'s copyrights in the Stampin' Up! Art." (2nd Am. Compl. ¶ 27, ECF No. 15 at 20.) The Independent Contractor Agreement contains a provision that provides: "I will not engage in

any activity that would damage the copyrights . . . or reputation of Company." (ECF No. 45-1 at 2.) The Independent Contractor Agreement also provides that "I understand that the Company's . . . copyrighted materials . . . belong solely to the Company, and any use of the [copyrighted materials] must be in strict compliance with the Company's policies." (ECF No. 45-1 at 3.) The court is satisfied that Plaintiff has pleaded allegations showing that Hurst breached the contract. Lastly, Plaintiff has pleaded that "[a]s a direct and proximate result of Hurst's breach of the Contract, Stampin' Up! has been damaged in an amount to be proved a trial." (ECF No. 15 at 21.) Assuming these allegations are true, Plaintiff is entitled to judgment on its breach of contract claim against Hurst.

Based on Plaintiff's allegations, the court can reasonably infer that Hurst is liable and default judgment should be entered.

### III. Damages

"Default judgment, however, cannot be entered until the amount of damages has been ascertained." *Lopez*, No. 2018 WL 1535506, at *3 (citing *Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984)). "One of the main reasons for this requirement is to prevent plaintiffs who obtain default judgments from receiving more in damages than is supported by actual proof." *Id*. (citation omitted). Rule 55 provides that "[t]he court may conduct hearings . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." Fed.R.Civ.P. 55(b)(2)(B).

Plaintiff seeks "an award of statutory damages . . . ." (ECF No. 44 at 6.) Under 17 U.S.C. § 504, a "copyright owner may elect . . . to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work . . . in a sum of not less than $750 or more than $30,000 as the court considers just." 17

U.S.C. § 504(c)(1). Plaintiff argues that "[t]he amount of the statutory damages award[ed] for each work infringed is within the discretion of the Court." (ECF No. 44.) Plaintiff provides the relevant factors the court should consider in determining the statutory damages:

> (1) the expenses saved and the profits reaped; (2) the revenues lostby the plaintiff; (3) the value of the [copyright]; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

(ECF No.44 at 6–7) (citing *USA, LLC v. Englert*, 2:06-cv-378, 2011 WL 147893, *14 (D. Utah Jan. 18, 2011)). Plaintiff argues that "[t]he first and second factors cannot properly be addressed due to Hurst's default, which also turns the sixth factor against Hurst." (ECF No. 44 at 7.) Plaintiff "requests a statutory damage award of $10,000 per work infringed, for a total of $40,000." (ECF No. 44 at 7.)

But Plaintiff provides no information to the court regarding the third factor, "the value of the" copyrights. To the extent Plaintiff seeks an amount in excess of $750 per violation, the court requests additional evidence to support the amounts requested. The court therefore grants default judgment as to liability, but reserves judgment on the amount of damages. Should the Plaintiff advise the court that it accepts $750 for each of the four violations as appropriate statutory damages, the court will enter judgment in the amount of $3,000 and determine the amount of attorney fees based on the present record. If the Plaintiff requests an additional amount of statutory damages, the court will hold a hearing "to determine the amount of damages." Fed.R.Civ.P. 55(b)(2)(B). At this hearing, Plaintiff would bring evidence relating to the value of the copyrighted materials—the [1] the 2015–16 Holiday Catalog; [2] the 2012–13 Annual Catalog; [3] the 2013–14 Annual Catalog; and [4] the 2014–15 Annual Catalog . . . ." (ECF No. 44 at 6.)

Plaintiff also seeks a "permanent injunction enjoining Hurst from further acts of copyright infringement." (ECF No. 44. At 6.) "Section 502(a) of the Copyright Act authorizes a court to issue a permanent injunction 'on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.'" *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1555 (10th Cir. 1996) (quoting 17 U.S.C. § 502(a)). "A copyright holder that establishes past infringement and a substantial likelihood of infringement in the future is normally entitled to a permanent injunction against the infringer pursuant to § 502(a)." *Id.* (citation omitted). Plaintiff argues that "Hurst's pattern of infringing on Stampin' Up!'s copyrighted works demonstrates that an injunction is necessary and appropriate for deterrence purposes." (ECF No. 44 at 8.) The court grants Plaintiff's motion for permanent injunctive relief and directs Plaintiff to submit a proposed order.

Plaintiff also argues that it "is entitled to an award of its costs and attorney's fees incurred in connection with the enforcement of its contract rights against Hurst." (ECF No. 44 at 5.) In support of this argument, Plaintiff cites the Independent Demonstrator Agreement that Hurst signed in 2009, which provides:

> In the event I breach any of the terms and conditions of this Agreement and it shall become necessary for the Company (Stampin' Up!) to enforce the same, the Company shall be entitled to payment and/or award of attorney's fees and costs incurred in connection with resolution of the dispute.

(ECF No. 45-1 at 5.) Plaintiff provides that it "has incurred at least $25,197.73 in costs and attorney's fees in connection with enforcement of its contract rights against Hurst." (ECF No. 44 at 5.) Plaintiff's attorney, in a declaration, provided a "table present[ing] the information relating to" the attorney's fees. (*See* Ekins Decl. ¶ 6, ECF No. 45 at 2–5.) The court will decide the appropriate amount of attorney's fees once Plaintiff advises the court how it wishes to proceed on the request for statutory damages.

15

**Conclusion**

The court grants Plaintiff's motion for permanent injunctive relief and directs Plaintiff to submit a proposed order. The court also finds that Hurst is liable and default judgment should be entered against her, but will not determine the amount of statutory damages or attorney fees until Plaintiff advises how it wishes to proceed. Should the Plaintiff advise the court that it accepts $750 for each of the four violations as appropriate statutory damages, the court will enter judgment in the amount of $3,000 and determine the amount of attorney fees based on the present record. If the Plaintiff requests an additional amount of statutory damages, the court will hold a hearing "to determine the amount of damages." Fed.R.Civ.P. 55(b)(2)(B).

DATED this 1st day of May, 2018.

                                          BY THE COURT:

                                          CLARK WADDOUPS
                                          United States District Judge